UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRUCE SCOTLAND, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| NOVELL, INC., RONALD W. HOVSEPIAN, DANA C. RUSSELL, RICHARD L. CRANDALL, RICHARD L. NOLAN, JOHN W. PODUSKA, SR., FRED CORRADO, ALBERT AIELLO, PATRICK S. JONES, GARY G. GREENFIELD, JUDITH H. HAMILTON, ATTACHMATE CORPORATION, LONGVIEW SOFTWARE ACQUISITION CORP., and CPTN HOLDINGS LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | **SHAREHOLDER CLASS ACTION COMPLAINT** |
| Defendants. | ) ) | |

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by plaintiff on behalf of holders of common stock of Novell, Inc. ("Novell" or the "Company") against Novell, Attachmate Corporation ("Attachmate"), Longview Software Acquisition Corp. ("Longview"), CPTN Holdings LLC ("CPTN"), and certain Novell officers and directors. This action arises out of the Individual Defendants' (as defined herein) agreement to sell Novell via an unfair process and at the grossly inadequate price of $6.10 per share of Novell common stock to Attachmate (the "Proposed Acquisition"). The Proposed Acquisition also involves the sale of certain intellectual property assets to CPTN, a consortium organized by Microsoft Corporation, for $450 million of the approximately $2.2 billion total transaction price (the "Patent Purchase Agreement"). This action seeks to enjoin defendants from further breaching their fiduciary duties in their pursuit of a sale of the Company at an unfair price through an unfair and self-serving process.

2.      In pursuing the unlawful plan to induce Novell's shareholders to vote in favor of the Proposed Acquisition via an unfair and uninformed process, each of the defendants violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, diligence, independence, good faith, and fair dealing.

3.      Founded in 1979 and headquartered in Waltham, Massachusetts, Novell operates as a developer of proprietary and open source enterprise software for security and identity management, system and resource management, desktop, workgroup, and data center solutions. The Company operates under two business units: Security, Management, and Operating Platforms; and Collaboration Systems. As a leader in Intelligent Workload Management, Novell provides software and services that allow organizations to better manage their computing environments. The Company's growth is rooted in its SUSE Linux Enterprise platform, a renowned and leading distribution system that underpins all of Novell's products and is the crown jewel of the Company's portfolio.

4.      Novell is an industry leader and Attachmate hopes to acquire its highly valuable product base going forward, to the detriment of Novell's public shareholders. Indeed, on the day the Proposed Acquisition was announced, Attachmate's chairman and Chief Executive Officer ("CEO") Jeff Hawn stated that "[t]his acquisition will add significant assets to our current portfolio holdings and the Novell and SUSE brands will allow us to deliver even more value to customers." In addition to acquiring Novell's valuable business assets, Attachmate will gain over $1 billion in cash and short-term investments owned by the Company. Net of Novell's cash and short-term investments and the $450 million CPTN is paying for certain intellectual property assets, Attachmate is actually only paying about $650 million for Novell.

5.      While Attachmate will reap the future benefits from Novell's valuable assets, the Company's common shareholders will be divested of their ownership for the inadequate consideration of $6.10 per share. This consideration amounts to a mere 9% premium over the Company's stock price on the day prior to the announcement of the Proposed Acquisition, and is at a 6.3% *discount* to the level at which Novell traded just two months ago. Further, the consideration offered in the Proposed Acquisition is also substantially lower than the target prices maintained by a number of research analysts at the time the Proposed Acquisition was announced.

6.      The members of the Board of Directors (the "Board") are breaching their fiduciary duties by deciding to sell the Company now at an unfair price. In addition, the

members of the Board further breached their fiduciary duties by agreeing to preclusive deal protection devices in connection with the Agreement and Plan of Merger by and between the Company, Attachmate, and Longview on November 21, 2010 (the "Merger Agreement"). These provisions, summarized below, which effectively preclude any competing proposals to acquire the Company, include: (i) a no-solicitation provision prohibiting defendants from performing their duties to diligently obtain, consider, and disclose all reasonably available information concerning the best value for Novell shareholders; (ii) a matching rights provision whereby Attachmate retains the right to match any competing proposals received by the Company; and (iii) a termination fee payable by the Company to Attachmate of $60 million if the Proposed Acquisition is terminated in connection with a competing acquisition proposal or under certain other circumstances.

7.      In exchange for agreeing to the unfair and self-serving terms in the Merger Agreement, the Individual Defendants will receive benefits not available to Novell's common shareholders. For example, the vesting of options and restricted shares owned by the Individual Defendants will accelerate upon consummation of the Proposed Acquisition, conferring an immediate cash windfall of millions of dollars upon those defendants. Further, certain of the Individual Defendants are in line to receive change in control termination payouts totaling over $18 million in the aggregate should they not continue in their positions with the post-Proposed Acquisition company.

8.      Because defendants dominate and control the business and corporate affairs of Novell, there exists an imbalance and disparity of economic power between them and the public shareholders of Novell. Therefore, it is inherently unfair for defendants to execute and pursue any Proposed Acquisition agreement under which they will reap disproportionate benefits to the exclusion of obtaining the maximum shareholder value. Nonetheless, instead of attempting to negotiate a contract reflecting the best consideration reasonably available for the Novell shareholders, who they are duty-bound to serve, defendants disloyally placed their own interests first and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.

9.     To remedy defendants' breaches of fiduciary duty and other misconduct, plaintiff seeks, inter alia: (i) injunctive relief preventing consummation of the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders; and (ii) a directive to the Individual Defendants to perform their fiduciary duties of loyalty and due care in pursuit of the transaction offering the best value reasonably available to Novell shareholders.

### JURISDICTION AND VENUE

10.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332 in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  This action is not a collusive action designed to confer jurisdiction on this court of a court of the United States that it would not otherwise have.

11.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Novell maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Novell, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

13.     Plaintiff Bruce Scotland is a shareholder of Novell. Plaintiff Scotland is a citizen of Ohio.

14.     Defendant Novell is a Delaware corporation and leader in Intelligent Workload Management, engaged in helping organizations securely, efficiently, and cost-effectively deliver and manage computing services across physical, virtual, and cloud computing environments. Novell develops, sells, and installs enterprise-quality software that is positioned in the operating systems and infrastructure software segments of the information technology industry. Pursuant to the Merger Agreement, Novell will become a wholly-owned subsidiary of Attachmate upon completion of the Proposed Acquisition. Novell's principal executive offices are located at 404 Wyman Street, Waltham, Massachusetts.

15.     Defendant Ronald W. Hovsepian ("Hovsepian") is Novell's CEO and a director and has been since June 2006. Hovsepian is also Novell's President and has been since October 2005. Hovsepian was Novell's Chief Operating Officer from October 2005 to June 2006; Executive Vice President and President, Worldwide Field Operations from May 2005 to November 2005; and President, Novell North America from June 2003 to May 2005. Defendant Hovsepian is a citizen of Massachusetts.

16.     Defendant Dana C. Russell ("Russell") is Novell's Senior Vice President and Chief Financial Officer and has been since February 2007. Russell was also Novell's Vice President and Interim Chief Financial Officer from June 2006 to February 2007; Vice President of Finance from March 2000 to June 2006; Corporate Controller from June 2003 to June 2006; and Treasurer from December 2005 to June 2006. Russell joined Novell in 1994. Defendant Russell is a citizen of Massachusetts.

17.     Defendant Richard L. Crandall ("Crandall") is Novell's Chairman of the Board and has been since May 2008 and a director and has been since 2003. Defendant Crandall is a citizen of Colorado.

18.     Defendant Richard L. Nolan ("Nolan") is a Novell director and has been since 1998. Defendant Nolan is a citizen of Florida.

19.     Defendant John W. Poduska, Sr. ("Poduska") is a Novell director and has been since 2001. Defendant Poduska is a citizen of Massachusetts.

20.     Defendant Fred Corrado ("Corrado") is a Novell director and has been since 2002. Defendant Corrado is a citizen of Florida.

21.     Defendant Albert Aiello ("Aiello") is a Novell director and has been since 2003. Defendant Aiello is a citizen of Florida.

22.     Defendant Patrick S. Jones ("Jones") is a Novell director and has been since 2007. Defendant Jones is a citizen of California

23.     Defendant Gary G. Greenfield ("Greenfield") is a Novell director and has been since 2009. Defendant Greenfield is a citizen of Massachusetts.

24.     Defendant Judith H. Hamilton ("Hamilton") is a Novell director and has been since 2009. Defendant Hamilton is a citizen of California.

25.     Defendant Attachmate is a Washington corporation owned by an investment group led by Franciso Partners, L.P., Golden Gate Private Equity, Inc., and Thoma Bravo LLC. Attachmate enables information technology organizations to extend mission critical services and assures the services are managed, secure, and compliant by offering solutions for host connectivity and systems and security management. Attachmate's principal executive offices are located at 1500 Dexter Avenue N., Seattle, Washington.

26.     Defendant Longview is a Delaware corporation and wholly owned subsidiary of Attachmate. Pursuant to the Merger Agreement, Longview will be merged with and into Novell, with Novell continuing as the surviving corporation.

27.     Defendant CPTN is a Delaware limited liability company and a consortium of technology companies organized by Microsoft Corporation. Pursuant to the Patent Purchase Agreement, Novell will sell to CPTN all of Novell's right, title, and interest in 882 patents for $450 million in cash.

28.     The defendants named above in ¶¶15-24 are sometimes collectively referred to herein as the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

29.     Under Delaware law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, including a significant premium at the highest price attainable in the market.  To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

30.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Novell, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

31.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary

duties and aiding and abetting such breaches, including their duties of loyalty, good faith, and independence owed to plaintiff and other public shareholders of Novell.

32.     Defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class (as defined herein).  Certain Novell executives are also retaining their prestigious and lucrative positions and compensation at the post-Proposed Acquisition company, or will otherwise receive massive change in control termination payouts.  Certain executives have managed to secure for themselves substantial employment or termination payments at the expense of the shareholders' best interests.  Retaining employment and/or a multi-million dollar windfall after the Proposed Acquisition is a material reason why this offer may have been preferred by management over other strategic alternatives available. Accordingly, the Proposed Acquisition will benefit the Individual Defendants in significant ways not shared with Class members.  As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their Novell common stock in the Proposed Acquisition.

33.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon defendants as a matter of law.

## DEFENDANTS ANNOUNCE THE PROPOSED ACQUISITION

34.     On November 22, 2010, Novell issued the following press release announcing that the Individual Defendants had agreed to sell Novell to Attachmate for $6.10 per Novell share:

> Novell, Inc. (NASDAQ: NOVL), the leader in intelligent workload management, today announced that it has entered into a definitive merger agreement under which Attachmate Corporation would acquire Novell for $6.10 per share in cash in a transaction valued at approximately $2.2 billion. Attachmate Corporation is owned by an investment group led by Francisco Partners, Golden Gate Capital and Thoma Bravo. Novell also announced it has entered into a definitive

agreement for the concurrent sale of certain intellectual property assets to CPTN Holdings LLC, a consortium of technology companies organized by Microsoft Corporation, for $450 million in cash, which cash payment is reflected in the merger consideration to be paid by Attachmate Corporation.

The $6.10 per share consideration represents a premium of 28% to Novell's closing share price on March 2, 2010, the last trading day prior to the public disclosure of Elliott Associates, L.P.'s proposal to acquire all of the outstanding shares of Novell for $5.75 per share and a 9% premium to Novell's closing stock price on November 19, 2010.

"After a thorough review of a broad range of alternatives to enhance stockholder value, our Board of Directors concluded that the best available alternative was the combination of a merger with Attachmate Corporation and a sale of certain intellectual property assets to the consortium," said Ron Hovsepian, president and CEO of Novell. "We are pleased that these transactions appropriately recognize the value of Novell's relationships, technology and solutions, while providing our stockholders with an attractive cash premium for their investment."

Mr. Hovsepian continued, "We also believe the transaction with Attachmate Corporation will deliver important benefits to Novell's customers, partners and employees by providing opportunities for building on Novell's brands, innovation and market leadership."

"We are very excited about this transaction as it greatly complements our existing portfolio," said Jeff Hawn, chairman and CEO of Attachmate Corporation. "Novell has an established record of innovation, impressive technology and brand assets, and a leading ecosystem of partnerships and talented employees. The addition of Novell to our Attachmate and NetIQ businesses will enhance the spectrum of solutions we can offer to customers. We fully support Novell's commitment to its customers and we look forward to continuing to invest for the benefit of Novell's customers and partners."

Attachmate Corporation plans to operate Novell as two business units: Novell and SUSE; and will join them with its other holdings, Attachmate and NetIQ.

Attachmate Corporation's acquisition of Novell is subject to customary closing conditions, including regulatory approvals and clearance under the Hart-Scott-Rodino Act, and is also conditioned upon the closing of the proposed sale of certain intellectual property assets to CPTN Holdings LLC. In addition, the transaction is subject to approval by Novell's stockholders. The sale of the intellectual property assets to the consortium is subject to customary closing conditions, including regulatory approvals and clearance under the Hart-Scott-Rodino Act, and is also conditioned upon the closing of the merger with Attachmate Corporation. Novell currently expects these transactions to close in the first quarter of 2011.

J.P. Morgan is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to Novell. Credit Suisse and RBC Capital Markets are serving as financial advisors and Jones Day is acting as legal advisor to Attachmate Corporation.

35.    On November 22, 2010, the Company filed a Form 8-K/A with the United States Securities and Exchange Commission ("SEC"), wherein it disclosed the Merger Agreement. The announcement and filing reveal that the Proposed Acquisition is the product of a flawed sale process and, unless the offer price is increased, would be consummated at an unfair price.

36.    Section 8.2 of the Merger Agreement imposes a $60 million termination fee, or approximately 3.4% of the aggregate cash amount Attachmate has agreed to pay under the terms of the Proposed Acquisition.  As there are currently more than 351 million Novell shares outstanding, the termination fee amounts to approximately $0.17 per share.  This provision is unfair to the Company's shareholders and contrary to their interests because it deters and prevents the submission of higher proposals, especially in connection with the no-solicitation provisions in Section 6.3 of the Merger Agreement.

37.    Under Section 6.3 of the Merger Agreement, Novell is subject to a no solicitation clause that prohibits the Company from seeking a superior offer for its shareholders.  Section 6.3(a) restricts Novell's ability to:

> (i) initiate, solicit or knowingly take any action to facilitate or encourage the submission of, or participate or engage in any negotiations or discussions with respect to, any Acquisition Proposal, (ii) in connection with any potential Acquisition Proposal, disclose or furnish any nonpublic information or data to any Person concerning the Company or afford any Person other than Parent or its Representatives access to the properties, books or records, except as required by Law, pursuant to a request for information of any Governmental Entity or in accordance with, and pursuant to Section 6.3(b) or (iii) enter into or execute, or propose to enter into or execute, any Acquisition Agreement. The Company shall, and shall cause its Subsidiaries to, and use its reasonable best efforts to cause Representatives of the Company and its Subsidiaries to, cease immediately and cause to be terminated all discussions and negotiations with any parties (other than Parent) that commenced prior to the date hereof regarding any proposal that constitutes, or would reasonably be expected to lead to, an Acquisition Proposal, and request from each Person that has executed a confidentiality agreement with the Company the prompt return or destruction of all confidential information previously furnished to such Person or its Representatives and terminate access by each such Person and its Representatives to any online or other data rooms containing any information in respect of the Company or any of its Subsidiaries; provided, however, that the Company shall not be required, pursuant to this

Section 6.3(a), to request the return or destruction of information or to terminate access for, and shall be permitted to engage in discussions and negotiations with Patent Purchaser, any investors in Patent Purchaser and their respective Representatives in connection with the transactions contemplated by the Patent Purchase Agreement. Notwithstanding any other provision hereof, nothing contained herein shall restrict the Company from taking any actions or engaging in any negotiations or discussions with respect to, or furnishing any information or affording any access to the Patent Purchaser in connection with the Patent Purchase Agreement.

38.     Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision is actually illusory. In order for Novell to negotiate with any other suitors, the potential acquirer would first have to make an unsolicited offer. Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer that the Company reasonably expects to lead to a superior deal, no other bidders will emerge to make a superior proposal.

39.     Furthermore, under Section 6.3(c) of the Merger Agreement, should an unsolicited bidder arrive on the scene, the Company must notify Attachmate of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, Attachmate is granted three or five business days, depending on the circumstances, to amend the terms of the Merger Agreement to make a counter offer that only needs to be as favorable to the Company's shareholders as the unsolicited offer. Attachmate is able to match the unsolicited offer because it is granted unfettered access to the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the unsolicited offer. Accordingly, no rival bidder is likely to emerge.

40.     These onerous and preclusive deal protection devices operate conjunctively to ensure that no competing offers will emerge for the Company so that the Individual Defendants can lock in their own personal benefits under the Proposed Acquisition. These personal benefits to the Individual Defendants have caused them to shortchange Novell shareholders by accepting an inadequate offer price.

41.     The offer price of $6.10 per Novell share substantially undervalues the Company's growth prospects and the value of its assets. Those familiar with the Company agree

that its asset portfolio, in particular the high growth SUSE Linux assets and Novell's $1 billion in cash and short-term investments, is immensely valuable. According to Jesse Cohn, a portfolio manager at Elliot Management Corp. whose affiliate is one of the largest shareholders of Novell:

> "Novell has a portfolio of valuable assets—a legacy business with strong cash flows, attractive technology in the [identity-and-security-management and systems-resource-management] segments, extremely valuable intellectual property and a highly strategic Linux business."

42.    Notably, defendants are treating Elliot Associates L.P. ("Elliot") differently than the rest of the Company's shareholders. Elliot had previously attempted to acquire Novell for $5.75 a share in cash and, together with its affiliates, owns 7% of the Company's outstanding common stock and has an economic interest in an additional 1.5% of the outstanding shares of common stock. In order to secure Elliot's approval of the Proposed Acquisition, Elliot will receive an equity interest in Attachmate as part of the transaction. The statements of Mr. Cohn, along with Elliot's actions in taking an equity position in Attachmate, shows that the offer price in the Proposed Acquisition undervalues the Company.

43.    Further, a number of research analysts had target prices for Novell above the price offered in the Proposed Acquisition when announced. For example, Bill Kavaler of Oscar Gruss & Son had a target price of $7.00, Mark Murphy of Piper Jaffray had a target price of $6.50, and Brad Zelnick ("Zelnick") of Macquarie had a target price of $7.50, a whopping 18.6% above the Proposed Acquisition consideration. Zelnick, who affirmed his target price for the Company as recently as November 10, 2010, also provided the following graphic illustrating the Company's value:



U.S. $1.50 Strategic Value

U.S. $1.50
Security, Management & Operating Platforms

U.S. $3.50 Financial Value

U.S. $1.50
Recurring Legacy Revenue

U.S. $2.00
Recurring Growth Revenue

U.S. $2.50 Cash Value

U.S. $2.50 Cash
(Discounted for Offshore portion)

**US$7.50 Target Price**

If the Proposed Acquisition is consummated, Novell shareholders will lose the opportunity to continue to participate in the Company's success and growth garnered from its valuable assets in exchange for the grossly inadequate consideration of $6.10 per Novell share.

## SELF-DEALING

44.     By reason of their positions with Novell, the Individual Defendants have access to non-public information concerning the financial condition and prospects of Novell. Thus, there exists an imbalance and disparity of knowledge and economic power between the Individual Defendants and the public shareholders of Novell. Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any Proposed Acquisition agreement under which they will reap disproportionate benefits to the exclusion of obtaining the best value for shareholders. Instead, the Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.

45.     Specifically, the Individual Defendants secured accelerated vesting of their Novell stock options and restricted shares in connection with the consummation of the Proposed Acquisition. As described in the November 22, 2010 8-K/A:

> Upon completion of the Merger, each outstanding option to purchase Novell common stock (an "Option") and each outstanding award or unit (other than retention program restricted stock units ("Retention RSUs")) entitling its recipient to retain or receive, upon vesting, Novell common stock ("Restricted Stock") will become fully vested and converted into the right to receive cash payments. The cash payment received by a holder of an Option will be an amount equal to the product of (i) the Merger Consideration less the applicable per-share exercise

price multiplied by (ii) the number of shares of Novell common stock issuable upon the exercise of such Option. The cash payment received by a holder of Restricted Stock will be an amount equal to the product of (i) the Merger Consideration multiplied by (ii) the number of shares of Novell common stock subject to the award.

This provision provides an immediate cash windfall upon consummation of the Proposed Acquisition of millions of dollars in the aggregate.

46.     It is also anticipated that defendants Hovsepian and Russell will continue in their lucrative positions with the post-Proposed Acquisition company.  According to Section 2.1(c) of the Merger Agreement, in pertinent part:

> The officers of the Company immediately prior to the Effective Time shall continue as officers of the Surviving Company, each to hold office in accordance with the certificate of incorporation and bylaws of the Surviving Company until their respective successors shall have been duly elected or appointed and qualified, or until their earlier death, resignation or removal.

If defendants Hovsepian and Russell are instead terminated involuntarily in connection with the Proposed Acquisition, they will be entitled to cash payments totaling over $18 million, according to the following illustration presented in the Company's 2010 Annual Proxy:

| Name | Lump Sum Cash Payment | Health and Dental Coverage | 401(k) Matching Contributions | Estimated Tax Gross-Up | Total Cash Payments |
|---|---|---|---|---|---|
| Ronald W. Hovsepian | $8,785,000 | $43,503 | $19,600 | $4,330,791 | $13,178,894 |
| Dana C. Russell | $3,280,030 | $43,503 | $19,600 | $1,533,154 | $ 4,876,287 |

47.     The Proposed Acquisition is wrongful, unfair, and harmful to Novell public stockholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members. Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights through the sale of Novell via an unfair process.  Accordingly, the Proposed Acquisition will benefit the Individual Defendants at the expense of Novell shareholders.

## THE UNFAIR AND INADEQUATE PROCESS

48.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, and not structure a preferential deal for themselves.  Due to the Individual Defendants' eagerness to enter into a transaction with

Attachmate, they failed to implement a process to obtain the maximum price for Novell shareholders.

49.     As a result of defendants' conduct, Novell public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. The consideration reflected in the Merger Agreement does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as directors and officers of Novell, and Attachmate at the time the Proposed Acquisition was announced. Indeed, the Individual Defendants ensured that Novell would be sold to one buyer and one buyer only by negotiating a no-solicitation clause that prevents Novell from soliciting higher offers, the matching rights provision, and a $60 million termination fee that will discourage any unsolicited offers.

50.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

- Withdraw their consent to the merger of Novell with Attachmate and allow the shares to trade freely - without impediments including the $60 million termination fee, matching rights, and no-solicitation provision;

- Act independently so that the interests of Novell public stockholders will be protected;

- Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of Novell public stockholders; and

- Solicit competing bids to Attachmate's offer to ensure that the Company's shareholders are receiving the maximum value for their shares.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action for himself and on behalf of all holders of Novell common stock which have been or will be harmed by the conduct described herein (the "Class"). Excluded from the Class are the defendants and any individual or entity affiliated with any defendant.

52.     This action is properly maintainable as a class action.

53.     The Class is so numerous that joinder of all members is impracticable. According to Novell's SEC filings, there were more than 351 million shares of Novell common stock outstanding as of November 21, 2010.

54.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, and fair dealing;

(d)     whether Novell aided and abetted the Individual Defendants' breaches of fiduciary duties;

(e)     whether Attachmate, Longview, and/or CPTN aided and abetted the Individual Defendants' breaches of fiduciary duties; and

(f)     whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

55.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

56.     Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

57.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

58.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

59.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

60.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

61.    The Individual Defendants have violated the fiduciary duties of care, loyalty, and independence owed to the public shareholders of Novell and have acted to put their personal interests ahead of the interests of Novell shareholders.

62.    By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from Novell.

63.    The Individual Defendants have violated their fiduciary duties by entering Novell into the Proposed Acquisition without regard to the effect of the proposed transaction on Novell shareholders.

64.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and independence owed to the shareholders of Novell because, among other reasons:

(a)    they failed to take steps to maximize the value of Novell to its public shareholders;

(b)    they failed to properly value Novell and its various assets and operations; and

(c)    they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

65.    Because the Individual Defendants dominate and control the business and corporate affairs of Novell, and are in possession of or have access to private corporate information concerning Novell's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Novell which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

66.    By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

67.    The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

68.    As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of Novell's assets and operations.  Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

69.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against Novell

70.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

71.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

72.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to Plaintiff and the members of the Class.

73.     Novell colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

74.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

**COUNT III**

**Claim for Aiding and Abetting Breaches of Fiduciary Duty Against
Attachmate, Longview, and CPTN**

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

76.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

77.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

78.     Defendants Attachmate, Longview, and CPTN colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

79.     Defendants Attachmate, Longview, and CPTN participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests. Defendants Attachmate, Longview, and CPTN obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches. Defendants Attachmate, Longview, and CPTN will benefit, inter alia, from the acquisition of the Company at an inadequate and unfair price if the Proposed Acquisition is consummated.

80.    Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class, and against defendants as follows:

A.    Declaring that this action is properly maintainable as a class action;

B.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.    Rescinding, to the extent already implemented, the Merger Agreement;

D.    Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process reasonably designed to enter into a merger agreement providing the best possible value for shareholders;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Novell and obtain a transaction which is in the best interests of Novell shareholders;

F.    Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.    Granting such other and further equitable relief as this Court may deem just and proper.

DATED: December 7, 2010

PARTRIDGE, ANKNER & HORSTMANN, LLP
TERENCE K. ANKNER

TERENCE K. ANKNER

BBO No. 552469
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999
Facsimile: (617) 859-9998

ROBBINS UMEDA LLP
MARC M. UMEDA
STEPHEN R. ODDO
REBECCA A. PETERSON
ARSHAN AMIRI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

KENDALL LAW GROUP, LLP
JOE KENDALL
JAMIE J. MCKEY
3232 McKinney, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015

Counsel for Plaintiff

554146